UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------x

RAOUL SOUTH,

                Petitioner,

    - against -

WILLIAM LEE,

                Respondent.

------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/25/2017

13-CV-07261
(TPG)

**OPINION**

    *Pro se* petitioner Raoul South ("Petitioner"), who was convicted of first degree murder after a jury trial in Westchester County Court, and whose conviction was affirmed by the Appellate Division of the Supreme Court of New York, 849 N.Y.S.2d 603 (N.Y. App. Div. 2d Dep't 2008), has filed an amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (2012) seeking to set aside his conviction. ECF No. 1; ECF No. 25.

    Petitioner filed his original habeas corpus petition on October 11, 2013. ECF No. 1. Petitioner subsequently filed a motion to amend, which was granted in part and denied in part in an Order issued on April 3, 2014 by Magistrate Judge Paul E. Davison. ECF No. 24. The case was re-assigned to the undersigned Judge on September 26, 2017, and the court now considers the claims that remain after Judge Davison's ruling: (1) ineffective assistance of counsel on appeal, ECF No. 23, at 32; (2) improperly admitting an involuntary confession, ECF No. 23, at 63; (3) juror misconduct in violation of Petitioner's right to a fair

trial, ECF No. 23, at 55; (4) improper testimony by an expert, ECF No. 23, at 59; and (5) improper hearsay testimony in violation of the Confrontation Clause of the Sixth Amendment, ECF No. 23, at 46. Upon consideration of these claims, the court denies the petition relief in its entirety.

## BACKGROUND

### I.    Facts Giving Rise to Petitioner's Conviction

Petitioner's conviction arises out of the fatal shooting of 22 year-old Devon Clarke on the morning of August 20, 2000. ECF No. 6, at 2. The events leading up to the shooting, as recounted in both Respondent's Opposition Brief to the Appellate Division of the Supreme Court of New York, ECF No. 6, Ex. 3, as well as the Affidavit in Opposition to Petition for a Writ of Habeas Corpus, ECF No. 6, are as follows.

On August 19, 2000, Clarke, a senior at Clark Atlanta University, traveled with his mother back to his home in Mount Vernon, New York, for the weekend. ECF No. 6, at 1-2. That night, he decided to go out to a neighborhood topless bar called Sue's Rendezvous with a childhood friend, Eric Fraser. ECF No. 6, at 2. They stayed at Sue's Rendezvous for approximately one hour, and upon leaving the bar, Clarke used Fraser's cell phone to call a woman that he had met earlier in the year named Rasheda Farmer. ECF No. 6, at 2. Farmer agreed to meet Clarke, and Clarke and Fraser drove to her apartment building. ECF No. 6, at 2. When they arrived at the building, Clarke called Farmer using Fraser's cell phone. ECF No. 6, at 2.

According to the prosecution, during the period of time it took for Clarke to travel to Farmer's apartment, Farmer was setting Clarke up to be robbed by one of her brother's friends—Petitioner Raoul South. ECF No. 6, at 2. Petitioner was at Farmer's apartment and told Farmer that he needed some money. ECF No. 6, at 2. Farmer told him that someone with money was coming to the apartment to see her. ECF No. 6, at 2.

Clarke arrived outside Farmer's apartment in his mother's white Volvo, which he had been driving for the night. ECF No. 6, at 2-3. Farmer approached the car and Petitioner followed close behind her. ECF No. 6, at 3. Upon seeing Petitioner, Clarke removed a semi-automatic handgun from under the driver's seat and pointed it at Petitioner. ECF No. 6, at 3. Despite the fact that Farmer and Petitioner are not related by blood, Farmer reassured Clarke that Petitioner was her cousin and he should put the handgun away. ECF No. 6, at 3. Clarke put it away, and Farmer and Petitioner got into the vehicle. ECF No. 6, at 3.

The group went back to Sue's Rendezvous. ECF No. 6, at 3. Fraser left after a short time, and Clarke, Farmer, and Petitioner left about thirty minutes after Fraser. ECF No. 6, at 3. Clarke then drove the group to the Bronx to purchase marijuana and parked the car on South 11th Avenue in Mount Vernon to smoke it. ECF No. 6, at 3. Clarke was sitting in the driver's seat, Farmer was sitting in the passenger seat, and Petitioner was sitting in the back seat directly behind Clarke. ECF No. 6, at 3.

After Clarke parked the car, Petitioner, without warning, took the .357 revolver hidden in his waistband and shot Clarke in the back of the head. ECF

No. 6, at 3. The bullet entered the back of Clarke's head and exited from his left cheek. ECF No. 6, at 3. It then landed in the front dashboard. ECF No. 6, at 3. Petitioner exited the car, opened Clarke's door, and removed all of Clarke's money. ECF No. 6, at 4. Farmer took Clarke's jewelry from his neck and the handgun from below the driver's seat and gave them to Petitioner. ECF No. 6, at 4. Because her clothes were stained with Clarke's blood, Farmer changed and discarded her clothing in the trash outside of her grandmother's apartment. ECF No. 6, at 4. She also discarded Clarke's wallet there. ECF No. 6, at 4. Petitioner and Farmer split the money and returned to Farmer's apartment to sleep. ECF No. 6, at 4.

Police discovered Clarke's body the next day in the white Volvo. ECF No. 6, at 4. His pockets were turned inside-out. ECF No. 6, at 4. Police also found a baseball cap next to the car. ECF No. 6, at 4. Detectives traced the car to Clarke's mother, and learned from his mother that Clarke had borrowed the car to go out with Fraser. ECF No. 6, at 4. Fraser informed the police that he had last seen Clarke with Farmer at Sue's Rendezvous. ECF No. 6, at 4. Farmer's number was still stored in Fraser's phone, and the police traced the number to her apartment. ECF No. 6, at 4. Police also visited Sue's Rendezvous and viewed the surveillance video from that night. ECF No. 4, at 6. In the surveillance tape, Petitioner was wearing the baseball cap that was found next to the Volvo. ECF No. 4, at 6.

Detectives visited Farmer's apartment, and her mother pointed them to a multi-colored jacket hanging from Farmer's bed next to a shirt that looked blood-stained. ECF No. 6, at 4. The colored jacket appeared to be the jacket that

4

Petitioner had been wearing in the surveillance video from Sue's Rendezvous. ECF No. 6, at 4. Detective Courtney Besley stayed behind in the hallway outside of the apartment and the other detectives left the building. ECF No. 6, at 4.

Farmer and Petitioner came back to the apartment at approximately 5:00pm. ECF No. 6, at 4. Detective Besley identified himself and asked them to identify themselves. ECF No. 6, at 4. Farmer gave Besley her name and confirmed that she lived in the apartment. ECF No. 6, at 4. Petitioner did not cooperate, and Besley handcuffed him and transported him to police headquarters close by. ECF No. 6, at 4. Besley and Petitioner did not speak in the car on the trip to police headquarters. ECF No. 6, at 4. Farmer was transported separately and was not handcuffed. ECF No. 6, at 4.

When Petitioner arrived at police headquarters, he was taken to a conference room where he was asked to give his identifying information. ECF No. 6, at 5. He was searched at approximately 6:30pm. ECF No. 6, at 5. Police officers found $228.30 and Clarke's jewelry in Petitioner's pants pocket. ECF No. 6, at 5. The sweatpants and sneakers he was wearing had Clarke's blood on them. ECF No. 6, at 5.

While Petitioner was at the stationhouse, detectives prepared search warrant applications for Farmer's apartment and her grandmother's house. ECF No. 6, at 6. They executed the search warrants and recovered Farmer's bloody clothes, as well as Clarke's empty wallet, in the garbage outside of Farmer's grandmother's house. ECF No. 6, at 6. Detectives also found Farmer's blood-stained purse in the garbage outside of her apartment. ECF No. 6, at 6. From

Farmer's house, detectives seized Petitioner's multi-colored jacket, an unloaded .357 caliber revolver, and a loaded nine-millimeter semi-automatic pistol. ECF No. 6, at 6. The multi-colored jacket was later found to have gunshot residue on it. ECF No. 6, at 6. In addition, subsequent analysis and examination revealed that the .357 caliber revolver was the murder weapon used to shoot Clarke. ECF No. 6, at 6. Lastly, officers found a doll that Clarke had bought for Farmer while at Sue's Rendezvous in a grassy lot in the area where Clarke's body was discovered. ECF No. 6, at 6. The doll had Clarke's blood on it. ECF No. 6, at 6.

Before the searches were conducted, at around 8:30pm, Detectives Michael Gonzalez and Arthur Glover read Petitioner his *Miranda* rights. ECF No. 6, at 5. Petitioner stated that he understood each right and that he was willing to waive them. ECF No. 6, at 5. He signed a form indicating his waiver. ECF No. 6, at 5. While the warrants were being prepared and the searches were being conducted, he was given food, beverages, and cigarettes. ECF No. 6, at 6. He was not interviewed until approximately 10:20pm, when Detectives Gonzalez and Michael LaRotonda took him to a conference room. ECF No. 6, at 6. They questioned Petitioner about his whereabouts the night before, and Petitioner stated that he went to Sue's Rendezvous with Farmer, but that the man they met, who drove a white Volvo, dropped them off at the end of the night at Farmer's grandmother's house. ECF No. 6, at 6. Petitioner was not handcuffed during the questioning. ECF No. 6, at 6.

After the search and seizure of evidence from Farmer's apartment and her grandmother's house, at approximately 1:45am, Detectives Gonzalez and Glover

showed Petitioner the evidence and told him that Farmer was cooperating. ECF No. 6, at 7. Petitioner started rocking back and forth and told the detectives that he was "tired of lying." ECF No. 6, at 7. He told them that he only intended to steal from Clarke, but confessed to shooting him. ECF No. 6, at 7. He stated that he took his gun out only intending to rob Clarke, but that Clarke saw him take out the gun so he fired. ECF No. 6, at 8. He then recounted how he exited the car and removed Clarke's money and wallet while Farmer removed Clarke's chains and gun. ECF No. 6, at 8. Petitioner told the detectives that when they arrived at Farmer's grandmother's house after the incident, Farmer changed her clothes while he counted the money and gave her half. ECF No. 6, at 8. Petitioner was then charged with first degree murder. ECF No. 6, at 8.

## II.  State Court Proceedings

### A.  Pre-Trial Hearing

On November 24, 2000, Petitioner moved to suppress his confession to the detectives, claiming that they were involuntary and coerced. ECF No. 6, at 8. He claimed that (1) the detectives failed to advise him of his *Miranda* rights, (2) he was abused physically and emotionally, leading to his confession, and (3) he had made a request for an attorney that the detectives did not respect. ECF No. 6, at 8; ECF No. 6, Ex. 1, at 6. On December 28, 2000, Westchester County Court ordered a pre-trial hearing with respect to the admissibility of the confession. ECF No. 6, at 8.

At the hearing, Detective Besley testified that he detained Petitioner at approximately 5:00pm on August 21, 2000, after visiting Farmer's apartment.

ECF No. 6, at 8. He testified that upon contact with Petitioner, he did not ask Petitioner anything other than his name. ECF No. 6, at 8. He testified that Detective Gonzalez read Petitioner his *Miranda* rights while in a holding cell at the stationhouse, and that after he read each right, Gonzales asked Petitioner if he understood. ECF No. 6, at 9. Petitioner answered affirmatively and marked "yes" on the waiver. ECF No. 6, at 9. Gonzalez then asked Petitioner if he wished to talk to them keeping the *Miranda* rights in mind, and Petitioner again answered affirmatively and checked "yes." ECF No. 6, at 9. He also signed his name on the form. ECF No. 6, at 9. He testified that at no point during this questioning or any subsequent interviews did Petitioner request an attorney. ECF No. 6, at 9. Petitioner was not handcuffed during the interviews and was offered food, drink, and cigarettes. ECF No. 6, at 11. Detective Besley did testify, however, that during the last part of the interview, Petitioner said "I'm telling you because I want to go to sleep and I want you to leave me alone." ECF No. 6, at 11. Petitioner did not present any witnesses at this hearing. ECF No. 6, at 11.

On March 20, 2002, Westchester County Court denied Petitioner's motion to suppress his statements. ECF No. 6, at 12. The court held that Petitioner "freely and voluntarily" spoke with the detectives. ECF No. 6, at 12. The court also found that the detectives provided proper *Miranda* warnings and that Petitioner made a "knowing and intelligent" waiver. ECF No. 6, at 12.

**B. Trial and Post-Conviction Proceedings**

The Westchester County Court then commenced a jury trial on Petitioner's first degree murder charge. *People v. South*, 849 N.Y.S.2d 603, 603 (N.Y. App.

Div. 2d Dep't 2008); ECF No. 6, at 12-18. Petitioner testified at the trial. ECF No. 6, at 12-18. At the conclusion of his trial, on April 16, 2002, the jury found Petitioner guilty of first degree murder. ECF No. 6, at 18. The court polled the jury and each juror answered that their verdict was "guilty." *People v. South*, No. 00-1285-01, 2002 WL 1610504, at *1 (N.Y. Co. Ct. June 24, 2002).

Before sentencing, Petitioner moved to set aside his verdict, claiming that his conviction should be set aside pursuant to New York Criminal Procedure Law § 330.30(2) (McKinney 2017), because "sympathy for the family of the victim became an improper and unlawful factor in the jury's verdict." *South,* 2002 WL 1610504, at *1. He based his claim on the fact that on April 17, 2002, one of the jurors called the court's chambers stating that she had not wanted to convict Petitioner but had been yelled at and "bullied" into finding the defendant guilty. *Id.* This conversation was brought to the attention of both the Petitioner and the prosecution, and Petitioner thereafter filed the motion. *Id.*

The Westchester County Court denied Petitioner's motion without a hearing. ECF No. 6, at 18. The court held that there was not a sufficient showing of juror sympathy because although the juror was "struggling with the concept of *intent*" she "never requested any clarification from the Court" on that issue. *Id.* at *2. Petitioner was sentenced to life imprisonment on July 15, 2002. ECF No. 6, at 18.

Petitioner appealed his conviction to the Appellate Division on June 28, 2002. ECF No. 6, at 18. After several changes in representation, his counsel, Robert Tendy, filed a brief raising five issues: (1) violation of the Confrontation

Clause, (2) impermissible hearsay testimony, (3) impermissible expert testimony, (4) juror misconduct, and (5) involuntary confession. ECF No. 6, at 18-20; *see also* Brief for Defendant-Appellant, *People v. South*, No. 2002-06637, 2007 WL 4923833 (N.Y. App. Div. 2d Dep't Feb. 20, 2007). On January 15, 2008, the Appellate Division affirmed Petitioner's conviction in its entirety. *People v. South*, 849 N.Y.S.2d 603 (N.Y. App. Div. 2d Dep't 2008).

On May 26, 2011, Petitioner filed a motion for extension of time to apply for permission to appeal to the New York Court of Appeals on three of the above claims—violation of the Confrontation Clause, impermissible hearsay testimony, and impermissible expert testimony. ECF No. 6, at 19. The Court of Appeals granted the extension. ECF No. 6, at 19; *People v. South*, 952 N.E.2d 1072 (N.Y. 2011). On July 6, 2011, filing *pro se*, Petitioner raised two additional issues: juror misconduct and the admissibility of a videotaped statement. ECF No. 6, at 19. On July 21, 2011, Petitioner applied, through counsel, for permission to appeal on the first three issues. ECF No. 6, at 20. Subsequently, filing *pro se*, he applied for permission to appeal on the two additional issues. ECF No. 6, at 20. On September 13, 2011, the Court of Appeals denied Petitioner permission to appeal. *People v. South*, 956 N.E.2d 808 (N.Y. 2011).

After the Court of Appeals denied permission to appeal, Petitioner filed a petition for a writ of error *coram nobis*, asking the Appellate Division to vacate its January 15, 2008 decision based on ineffective assistance of appellate counsel. ECF No. 6, at 20. The Appellate Division denied this petition on May 29, 2013 because Petitioner failed to establish that he was denied effective

assistance. *People v. South,* 965 N.Y.S.2d 728 (N.Y. App. Div. 2d Dep't 2013). He filed a motion for leave to appeal the Appellate Division's decision, which was denied by the Court of Appeals on September 11, 2013. *People v. South,* 997 N.E.2d 151 (N.Y. 2013).

Petitioner also filed a motion in the Westchester County Court requesting that the court vacate his conviction under New York Criminal Procedure Law § 440.10 (McKinney 2017). He then filed another motion requesting a stay. ECF No. 6, at 20. The County Court rejected his motion to stay, and instead denied the underlying motion without prejudice so that he could re-file the motion at a later time. ECF No. 6, at 20.

### III.    28 U.S.C. § 2254 Petition

Petitioner, moving *pro se,* filed the instant motion for habeas relief on October 11, 2013. ECF No. 1. He filed for permission to amend his original habeas petition by letter dated December 27, 2013. ECF No. 18. In an order dated April 3, 2014, Magistrate Judge Paul E. Davison granted in part and denied in part Petitioner's motion to amend. ECF No. 24. After Judge Davison's ruling, the claims that remain in Petitioner's habeas petition are: (1) ineffective assistance of appellate counsel for failing to raise certain claims, (2) admission of an involuntary confession in violation of Petitioner's Due Process rights, (3) juror misconduct violating Petitioner's right to a fair trial, (4) violation of Petitioner's Due Process because of impermissible expert testimony, and (5) violation of the Confrontation Clause through the introduction of hearsay. ECF

No. 23, at 32, 46, 55, 59, 63; ECF No. 24, at 1-2. The case was re-assigned to this court on September 26, 2017.

**DISCUSSION**

Petitioner raises five claims in his amended habeas petition: (1) ineffective assistance of appellate counsel, ECF No. 23, at 32; (2) improper admission of an involuntary confession, ECF No. 23, at 63; (3) juror misconduct violating Petitioner's due process right to a fair trial, ECF No. 23, at 55; (4) prejudicial and improper expert testimony, ECF No. 23, at 59; and (5) violation of the Confrontation Clause through improperly admitted hearsay testimony, ECF No. 23, at 46. The court analyzes each and finds that habeas relief should be denied as to all claims.

## I.  Claims Decided on the Merits by the State Court

Three of Petitioner's claims were decided on the merits by the state court: his ineffective assistance claim, ECF No. 23, at 32, involuntary confession claim, ECF No. 23, at 63, and his juror misconduct claim, ECF No. 23, at 55. The court finds that, under the highly deferential review that federal courts deploy for habeas claims that were decided on the merits by the state court, Petitioner is not entitled to habeas relief under any of these grounds.

### A.  Legal Standard for Federal Review of Habeas Claims Decided on the Merits

A petition for habeas corpus with respect to persons in state custody when there has been a state court determination on the merits is governed by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254(d) (2012). The AEDPA "place[d] a new constraint" on the ability of federal courts to

12

grant a state prisoner's petition, providing that writs of habeas corpus arising from a state court judgment "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings *unless* the adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *Id.* § 2254(d)(1) (emphasis added); *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

Thus, in order to prevail on a § 2254 claim, a habeas petitioner has the burden of proving that the state court decision was either "contrary to" or "involved an unreasonable application of" federal law. 28 U.S.C. § 2254(d)(1). Under the "contrary to" prong, a habeas petitioner must show that the state court "arrive[d] at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or that the state court "decide[d] a case differently than [the Supreme Court] on a set of materially indistinguishable facts." *Williams,* 529 U.S. at 413. Under the "unreasonable application" prong, the petitioner has the burden of showing that the state court used the correct legal standard but "unreasonably applied" that standard to the specific facts of the case. *Id.* To show that a state court unreasonably applied the legal standard, the petitioner must show that the court applied federal law in an "objectively unreasonable manner"—*i.e.,* that it was an *unreasonable* rather than merely an *incorrect* application. *Woodford v. Visciotti,* 537 U.S. 19, 25 (2002); *see also Williams,* 529 U.S. at 410 ("[T]he most important point is that an *unreasonable* application of federal law is different from an *incorrect* application of federal law.").

The determination that the state court decision was unreasonable rather than merely incorrect is a "substantially higher threshold." *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007). Even in cases where a court may have reached a conclusion contrary to the state court, a federal court must deny habeas relief as long as the contrary conclusion was not unreasonable. *See Harrington v. Richter,* 562 U.S. 86, 102 (2011) ("[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable."). Further, the AEDPA requires that federal courts presume the correctness of state courts' factual findings unless the petitioner can rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## B.    Petitioner's Claims

### 1.    Ineffective Assistance of Appellate Counsel

Petitioner claims that he received ineffective assistance from his assigned appellate counsel, Robert Tendy. ECF No. 23, at 31. His claim rests on the ground that Tendy failed to raise four claims on Petitioner's appeal of the Appellate Division's decision to the New York Court of Appeals. ECF No. 23, at 31. Petitioner raised this claim as part of his petition for a writ of error *coram nobis* asking the Appellate Division to vacate its January 15, 2018 decision based on ineffective assistance of appellate counsel. ECF No. 6, at 20. The Appellate Division rejected this claim, finding that Petitioner did not have sufficient evidence to establish ineffective assistance. *People v. South,* 965 N.Y.S.2d 728 (N.Y. App. Div. 2d Dep't 2013). The court now reviews this claim and the state court decision to determine whether it should grant habeas relief.

### i. Habeas Review for Ineffective Assistance of Appellate Counsel Claims

Courts review claims for ineffective assistance counsel under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, defendants have the burden of proof of showing that (1) their representation "fell below an objective standard of reasonableness" and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688, 694. Although *Strickland* itself applied to ineffective assistance of trial counsel, the Second Circuit also uses this standard with respect to claims for ineffective assistance of appellate counsel. *See Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994); *Claudio v. Scully*, 982 F.2d 798, 803 (2d Cir. 1992), *cert. denied*, 508 U.S. 912 (1993); *Giraldi v. Bartlett*, 108 F. Supp. 2d 321, 327 (S.D.N.Y. 2000).

Under the first prong, the defendant must show that his or her counsel "made errors so serious that [he or she] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Harrington*, 562 U.S. at 103 (quoting *Strickland*, 466 U.S. at 687). The defendant must demonstrate that his or her counsel "failed to act 'reasonabl[y] considering all the circumstances.'" *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quoting *Strickland*, 466 U.S. at 688). There is a "'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 687). Courts must keep in mind that counsel has a high degree of latitude to make "tactical decisions," and "[a]ctions or

omissions by counsel that 'might be considered sound trial strategy' do not constitute ineffective assistance." *Henry v. Poole*, 409 F.3d 48, 63 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 689).

Further, in attempting to show that counsel provided deficient performance, it is not enough to show that counsel failed to raise particular claims on appeal. *See Mayo*, 13 F.3d at 533. Counsel is not constitutionally obligated to raise all non-frivolous issues. *Jones v. Barnes*, 463 U.S. 745, 750-51 (1983); *Mayo*, 13 F.3d at 533. Thus, in order to demonstrate ineffective assistance, the petitioner must show that "counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Mayo*, 13 F.3d at 533. "For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the very goal of vigorous and effective advocacy . . . ." *Jones*, 463 U.S. at 754. Overall, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689.

Under the second prong, the defendant is required to prove that there is a "reasonable probability"—"a probability sufficient to undermine confidence in the outcome"—that the result of the proceeding would have been different. *Id.* at 694. The defendant must show that the likelihood of a different result is "substantial, not just conceivable." *Harrington*, 562 U.S. at 112; *see also Cullen*, 563 U.S. at 189. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just

16

result." *Strickland,* 466 U.S. at 686. In the appellate context, the petitioner must show that "there was a 'reasonable probability' that [the] claim would have been successful before the New York Court of Appeals." *Claudio,* 982 F.2d at 803 (quoting *Strickland,* 466 U.S. at 694). The defendant must "*affirmatively* prove prejudice." *Strickland,* 466 U.S. at 693 (emphasis added).

Because both the AEDPA and *Strickland* establish highly deferential standards, review of ineffective assistance of counsel claims under the AEDPA is "doubly deferential." *Cullen,* 563 U.S. at 190 (quoting *Knowles v. Mirzayance,* 556 U.S. 111, 123 (2009)); *see also Harrington,* 562 U.S. at 105 ("The standards created by *Strickland* and § 2254 are both highly deferential, and when the two apply in tandem, review is doubly so." (internal quotations and citations omitted)).

When a court is faced with an ineffective assistance of appellate counsel claim, pursuant to the AEDPA, the court must determine whether the state court's denial of a petition for *coram nobis* is "contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1). Petitioner must demonstrate that the state court "applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Bell v. Cone,* 535 U.S. 685, 699 (2002); *see also Harrington,* 562 U.S. at 101. This is a separate question from whether, under the federal court's independent judgment, counsel's performance fell below the standard laid out in *Strickland. See Harrington,* 562 U.S. at 101. In the habeas context, the petitioner must "do more than show that he would have satisfied *Strickland*'s test if his claim were being

analyzed in the first instance"—the petitioner must instead show that the state court applied *Strickland* unreasonably. *Bell*, 535 U.S. at 698.

When analyzing whether the state court applied *Strickland* in an unreasonable manner, a federal court "cannot simply conclude that the [state] court's application was erroneous; rather, [the court] must find that there was '[s]ome increment of incorrectness beyond error.'" *Cox v. Donnelly*, 387 F.3d 193, 197 (2d Cir. 2004) (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)). As long as there is a "reasonable argument that counsel satisfied *Strickland*'s deferential standard," the petitioner will not be granted relief. *Harrington*, 562 U.S. at 105.

### ii.    Petitioner's Ineffective Assistance Claim

Petitioner claims that Tendy denied him effective assistance of counsel because he failed to raise four additional claims on Petitioner's direct appeal to the New York Court of Appeals: (1) the police lacked probable cause to arrest Petitioner, (2) prosecutorial misconduct during summation, (3) lack of sufficient evidence to prove intent, and (4) ineffective assistance of trial counsel. ECF No. 23, at 31. Petitioner claims that Tendy's failure to raise these claims on direct appeal constituted ineffective assistance because he failed to raise these claims for "no strategic reason." ECF No. 23, at 31. He states that Tendy "took absolutely no interest in [his] appeal," as evidenced by the fact that he did not interview Petitioner, ask for input from Petitioner, inform Petitioner of his right to request leave from the court to file a *pro se* brief, or provide Petitioner with a draft of the brief. ECF No. 23, at 45.

Petitioner raised this claim as part of his petition for a writ of error *coram nobis* asking the Appellate Division to vacate its January 15, 2018 decision based on ineffective assistance of appellate counsel. ECF No. 6, at 20. The Appellate Division rejected this claim, finding that Petitioner did not have sufficient evidence to establish ineffective assistance of counsel. *People v. South*, 965 N.Y.S.2d 728 (N.Y. App. Div. 2d Dep't 2013).

As stated above, under the AEDPA, a court reviewing a habeas petition must only look to whether the state court (1) applied *Strickland* and (2) applied it in a way that was not "objectively unreasonable." *Bell*, 535 U.S. at 699. Here, although the Appellate Division's opinion denying the petition for writ of error *coram nobis* was sparse, the court did cite two opinions—*Jones v. Barnes*, 463 U.S. 745 (1983) and *People v. Stultz*, 810 N.E.2d 883 (N.Y. 2004). These cases suggest that the Appellate Division was applying the correct Supreme Court standard, satisfying the first prong of the AEDPA analysis. Thus, the court must turn to the second prong and analyze whether the court reasonably applied the *Strickland* test.

With respect to the second prong of the analysis, the court also finds that the state court satisfied the objective reasonableness standard. Looking to the first element of *Strickland*—whether counsel's actions constituted deficient performance, 466 U.S. at 688—the court finds that Petitioner has not established a sufficient showing to warrant habeas relief. In *Stultz*, one of the cases referenced by the Court of Appeals, the court found that appellate counsel's "well-developed" and detailed briefs were enough to show meaningful

representation. 810 N.E.2d at 889. Further, under *Jones*, the other case that the Court of Appeals referenced, it is "not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument." *Mayo*, 13 F.3d at 533 (citing *Jones*, 463 U.S. at 745, 754). Here, Tendy filed an extensive brief appealing Petitioner's conviction. *See* Brief for Defendant-Appellant, *People v. South*, No. 2002-06637, 2007 WL 4923833 (N.Y. App. Div. 2d Dep't Feb. 20, 2007). He recounted the facts and provided five in-depth arguments. *Id.* The fact that counsel did not raise every colorable claim that Petitioner requested, *Jones*, 463 U.S. at 754, does not rise to the level of deficient performance required for the first prong of the *Strickland* test.

Further, with respect to the second element of the *Strickland* test— prejudice, 466 U.S. at 693—the court also finds that Petitioner has not affirmatively shown that there is a substantial likelihood that his claims would have been successful in the Court of Appeals. Analyzing the first claim, lack of probable cause, ECF No. 23, at 32-40, it is clear from the facts of the case that the detectives had sufficient probable cause for arrest. When the detectives entered Farmer's apartment, her mother brought to their attention a multi-colored jacket that appeared to be the jacket Petitioner had been wearing in the surveillance videos and also appeared to be covered in blood. ECF No. 6, at 4. There was sufficient cause to then take Petitioner in to be questioned. Considering the second claim, prosecutorial misconduct during summation, the prosecutor's statements that the jurors would have to find that the detectives were "lying" to the jury, ECF No. 23, at 41, although strongly worded, was not

improper. The third claim, lack of sufficient evidence to prove intent, was not objected to during trial. ECF No. 23, at 42-44. Lastly, the ineffective assistance of trial counsel claim, based on the trial record, does not have a substantial likelihood of success. The sole fact that trial counsel failed to object to certain hearsay testimony, ECF No. 23, at 44-45, would not rise to the level of ineffective assistance under the *Strickland* test. Thus, there is insufficient evidence to show that any of the claims would have succeeded.

Petitioner's habeas claim for ineffective assistance of appellate counsel thus fails. Under the AEDPA and *Strickland*'s extremely deferential standard, the court finds that the state court applied *Strickland* in a reasonable manner, and that therefore Petitioner is not entitled to relief.

### 2. Suppression of Confession

Petitioner alleges that his confession was involuntary, and that admission of this confession into evidence during his trial deprived him of his Fifth Amendment rights. ECF No. 7, at 5; ECF No. 23, at 63-64. Petitioner initially challenged the voluntariness of his confession in a pre-trial hearing, but the hearing court found that his confession was obtained voluntarily and denied his motion to suppress his confession. ECF No. 6, at 8-11; ECF No. 7, Ex. 3.

Because both the Westchester County Court and the Appellate Division made a determination on the merits, the court analyzes this claim under the deferential AEDPA standard of review detailed above. The petitioner has the burden of demonstrating that the Appellate Division's decision was "contrary to" or "involved an unreasonable application of" federal law. 28 U.S.C. § 2254(d)(1).

The petitioner must show that either the court (1) came to the opposite conclusion than the Supreme Court, or (2 ) applied the law in an "objectively unreasonable manner"—a standard that is even higher than an incorrect application of the law. *Williams*, 529 U.S. at 410-13.

A confession is inadmissible if it was obtained using " 'methods offensive to due process' or under circumstances in which the suspect clearly had no opportunity to exercise 'a free and unconstrained will.' " *Tankleff v. Senkowski*, 135 F.3d 235, 242 (2d Cir. 1998) (quoting *Oregon v. Elstad*, 470 U.S. 298, 304 (1985)). The voluntariness of a confession is a totality-of-the circumstances determination in consideration of factors such as the defendant's physical and mental capabilities, the conditions of the interrogation, the conduct of law enforcement, and the period of confinement. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973); *Nelson v. Walker*, 121 F.3d 828, 833 (2d Cir. 1997).

When the claim at hand involves the voluntariness of a confession, a state court's determination with respect to "subsidiary questions, such as the length and circumstances of the interrogation, the defendant's prior experience with the legal process, and familiarity with the *Miranda* warnings . . . . are conclusive on the habeas court if fairly supported in the record." *Miller v. Fenton*, 474 U.S. 104, 117 (1985). Determinations as to these questions are "entitled to the [statutory] presumption of correctness" that must be rebutted by clear and convincing evidence. *Bryan v. Lee*, No. 09-CV-9276 (ER), 2013 WL 5586312, at *8 (S.D.N.Y. Oct. 9, 2013) (quoting *Nelson*, 121 F.3d at 833).

Here, the Westchester County Court's determination that the detectives provided sufficient *Miranda* warnings is supported by the record. The court found that "defendant was properly given his *Miranda* warnings; the defendant made a knowing and intelligent waiver of those rights; and . . . there was no coercive conduct on the part of the police and the statements were voluntarily made." ECF No. 7, Ex. 3, at 13. The Appellate Court then affirmed this decision, holding that the "hearing court properly denied that branch of the defendant's omnibus motion" because the "record supports the hearing court's decision to credit the testimony of the police witnesses, which established that the defendant was advised of his *Miranda* rights . . . and voluntarily waived them prior to making the subject inculpatory statements." *South,* 847 N.Y.S.2d at 605.

The court finds that, under the AEDPA standard, the state court determinations are entitled to deference. Because the Appellate Division's decision was not contrary to, or an unreasonable application of, federal law, the court denies habeas relief to Petitioner with respect to this claim.

### 3. Due Process Right to a Fair Trial

Petitioner claims that he was denied his right to a fair and impartial jury. ECF No. 23, at 55. He specifically claims that the Appellate Division erred when it denied his post-conviction motion to set aside the verdict pursuant to New York Criminal Procedure Law § 330.30 (McKinney 2017) based on juror misconduct. ECF No. 7, at 28; ECF No. 23, at 55. He argues that he is entitled to a hearing to determine whether the juror misconduct violated his right to a fair trial. ECF No. 23, at 55.

Because this claim was decided on the merits by the Appellate Division, the court analyzes this claim based on the deferential AEDPA standard detailed above. As stated previously, the petitioner has the burden of demonstrating that the Appellate Division's decision was "contrary to" or "involved an unreasonable application of" federal law. 28 U.S.C. § 2254(d)(1). The petitioner must show that the court either (1) came to the opposite conclusion than the Supreme Court, or (2) applied the law in an "objectively unreasonable manner." *Williams*, 529 U.S. at 410-13.

As a general matter, courts are hesitant to impeach a jury verdict based on post-conviction juror affidavits unless an external influence prejudiced the defendant. *United States v. Brasco*, 385 F. Supp. 966, 968 (S.D.N.Y. 1974), *aff'd*, 516 F.2d 816 (2d Cir. 1975), *cert. denied*, 423 U.S. 860 (1975). Under Federal Rule of Evidence 606(b), juror affidavits cannot be used to impeach a verdict unless used to show "extraneous" information prejudicing the juror's deliberations. Jurors thus may not testify to "any statement . . . occurr[ing] during the jury's deliberations" or to the "effect of anything upon that juror's or another juror's vote" or "any juror's mental processes concerning the verdict or indictment." Fed. R. Evid. 606(b)(1); *see also Mattox v. United States*, 146 U.S. 140, 149 (1892) ("[A] juryman may testify to any facts bearing upon the question of the existence of any extraneous influence, although not as to how far that influence operated upon his mind."). This rule is in place in order to ensure that there is a "full and frank discussion in the jury room." *Tanner v. United States*, 483 U.S. 107, 120 (1987).

Here, the jury convicted Petitioner of first-degree murder unanimously. The record reflects that at the end of the trial each juror was asked whether the verdict announced was, in fact, their verdict, and each juror responded affirmatively. *People v. South*, No. 00-1285-01, 2002 WL 1610504, at *1 (N.Y. Co. Ct. June 24, 2002). At no point did any juror state that he or she disagreed with the verdict. It was only *after* the conviction became final that Juror 12 submitted an affidavit claiming that "guilty" was not her final verdict. ECF No. 7, at 32; ECF No. 23, at 56-57.

Based on these circumstances, the Appellate Division found that Juror 12's affidavit was based on the "tenor of deliberations" and thus the court "exercised its discretion in denying the defendant's motion." *South*, 849 N.Y.S.2d at 605. Considering the fact that, under the Federal Rules of Evidence 606(b)(1), jury testimony cannot be used to impeach a verdict based on the "effect of [any information or action] on that juror's or another juror's vote . . . or . . . mental processes," the court finds that the Appellate Division's decision was reasonable. Because the state court's rejection of Petitioner's claim was not contrary to, or an unreasonable application of, clearly established federal law, the court denies habeas relief as to this claim.

## II. Procedurally Barred Claims

Petitioner raises two additional claims: that (1) the medical examiner testified outside the scope of his expertise, prejudicing the trial and depriving him of his Due Process rights, ECF No. 23, at 59, and (2) one of the detectives improperly referred to co-defendant Farmer's statements to the police, and thus

violated his Confrontation Clause rights under the Sixth Amendment, ECF No. 23, at 47-56. The court finds that both of these claims are barred on procedural grounds, and thus denies habeas relief for these claims.

## A.  Legal Standards for Procedural Bar

### 1.  Exhaustion Requirement

A prisoner convicted by a state court must exhaust all available state judicial remedies before a federal court can review a petition for habeas corpus. *Picard v. Connor*, 404 U.S. 270, 275 (1971); *see also* 28 U.S.C. § 2254(b)(1)(A) (stating that "[a]n application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless . . . the applicant has exhausted the remedies available in the courts of the State"). This rule is premised on comity, and ensures that "state courts have an opportunity to consider and correct any violations of their prisoner's federal constitutional rights." *Diaz v. Greiner*, 110 F. Supp. 2d 225, 229 (S.D.N.Y. 2000) (quoting *Warren v. McClellan*, 942 F. Supp. 168, 170 (S.D.N.Y. 1996)).

In order to satisfy the exhaustion requirement, a petitioner must "present[] the essential factual and legal premises of his federal constitutional claim to the highest state court capable of reviewing it." *Cotto v. Herbert*, 331 F.3d 217, 237 (2d Cir. 2003). The petitioner must "fairly present[]" the federal claim in state court, and by doing so, sufficiently alert the state court to the federal claim. *Picard v. Connor*, 404 U.S. 270, 275 (1971); *Daye v. Attorney General*, 696 F.2d 186, 192 (2d Cir. 1982) (en banc). The petitioner must "fairly apprise the court" of the claims and cannot "presume that state judges are clairvoyant." *Grey v.*

*Hoke*, 933 F.2d 117, 120 (2d Cir. 1991) (quoting *Petrucelli v. Coombe*, 735 F.2d 684, 689 (2d Cir. 1984)).

Not only does the claim have to be fairly presented, it must also be presented as a claim with a "constitutional dimension." *McFarland v. Scott*, 512 U.S. 849, 861 (1994). The petitioner can use "pertinent federal cases employing constitutional analysis" or "state cases employing constitutional analysis in like fact situations." *Daye*, 696 F.2d at 194. The claim must be "couched in constitutional terms or language" that demonstrates to the court that it is a federal constitutional claim rather than a state law claim. *Diaz*, 110 F. Supp. 2d at 229. Merely raising a similar claim is not enough—the petitioner must have raised the specific federal claim in the state courts in order to satisfy this exhaustion requirement.

### 2.    Adequate and Independent State Grounds

In addition, if the state court decided a claim on state law grounds "independent of the federal question[s]" raised, but that are also "adequate to support the [state court] judgment," a federal court should refrain from addressing the claim on habeas review. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). Although originally applied to direct appeals of state court judgments to the Supreme Court, the Supreme Court has also applied this independent and adequate state ground doctrine to state prisoner habeas petitions. *Lee v. Kemna*, 534 U.S. 362, 375 (2002) ("We first developed the independent and adequate state ground doctrine in cases on direct review from state courts, and later applied it as well 'in deciding whether federal district courts should address the

claims of state prisoners in habeas corpus actions.'" (quoting *Coleman*, 501 U.S. at 729)).

The adequate and independent state law doctrine arises "whether the state law ground is substantive or procedural." *Coleman*, 501 U.S. at 729. If a state court " 'clearly and expressly' states that its judgment rests on a state procedural bar" this constitutes an independent and adequate state grounds, and the federal court must deny habeas relief. *Harris v. Reed*, 489 U.S. 255, 263 (1989) (quoting *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985)). Unlike direct appeal, however, a state procedural default with respect to a habeas case may be excused if the petitioner can show either (1) cause and actual prejudice, or (2) that a "fundamental miscarriage of justice" will result. *Coleman*, 501 U.S. at 750. This is because the doctrine is based on prudential, rather than jurisdictional, grounds—it is in place "based on considerations of comity and finality." *Spence v. Superintendent, Great Meadow Corr. Facility*, 219 F.3d 162, 170 (2d Cir. 2000); *see also Lambrix v. Singletary*, 520 U.S. 518, 522-23 (1997).

To show cause, the petitioner must demonstrate that an external factor " 'impeded counsel's efforts' to raise the claim in state court" *McCleskey v. Zant*, 499 U.S. 467, 493 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). In order to prove that there would be a miscarriage of justice, the petitioner must show that the state court likely convicted an innocent person, and is reserved for "extraordinary case[s]." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). If a petitioner can demonstrate one of these two factors, then the district court may excuse a procedural default and get to the merits of the petitioner's claim.

28

In order to apply the adequate and independent state grounds doctrine, the state law ground must be "firmly established and regularly followed" in the state. *Lee*, 534 U.S. at 376 (quoting *James v. Kentucky*, 466 U.S. 341, 348 (1984)). Even if a ground is "firmly established" a federal court may still review the claim if applying the adequate and independent state grounds doctrine would be "exorbitant." *Id.* To determine whether applying the doctrine would be "exorbitant" courts look at whether (1) it was a procedural violation that the state court relied on that changed the outcome of the case, (2) state case law suggests that the state law at hand applies in the specific factual context, and (3) petitioner did "substantially compl[y]" with the state law rule. *Cotto*, 331 F.3d at 240.

### B. Petitioner's Claims

#### 1. Due Process Claim

Petitioner claims that his due process rights were violated because the trial court allowed a forensic pathologist to testify about the position of the deceased's body at the time of the shooting. ECF No. 23, at 61. Petitioner claims that this testimony was outside the scope of the expert's knowledge and thus deprived him of his Due Process rights. ECF No. 23, at 61.

In order to succeed on this claim, a habeas petitioner is required to "fairly present[]" the federal claim in state court. *Picard*, 404 U.S. at 275. As detailed above, this means that the petitioner must raise his federal constitutional claim in state court. *Id.*; *Daye*, 696 F.2d at 192. Raising a state claim that is similar to the federal constitutional claim, without "alert[ing] the court to [a] claim's federal

29

nature," is not sufficient for the purpose of fulfilling the exhaustion requirement. *Daye*, 696 F.2d at 192.

Here, Petitioner's brief appealing his conviction to the Appellate Division does not raise a federal claim. In his brief, Petitioner only referenced state law cases. ECF No. 7, Ex. 4, at 26-27. Further, he claimed that the expert's "stated responsibilities" and "training" do not qualify him to testify about "recreating a shooting event or anything like that," but did not claim that this was a violation of his Due Process rights. ECF No. 7, Ex. 4, at 23. Similarly, Petitioner's brief requesting an extension of time to file an appeal only discussed how the expert testimony was "clearly way outside of the medical examiner's expertise" but did not specify that this was a Due Process violation. ECF No. 7, Ex. 7, at 6. The Appellate Division made its ruling on state law grounds—citing only state law cases. *People v. South*, 849 N.Y.S.2d 603, 605 (N.Y. App. Div. 2d Dep't 2008). Nowhere in his briefs did Petitioner alert the court as to a federal constitutional claim, and the courts made their determinations on state-law grounds. Because the court finds that Petitioner failed to "fairly present" his Due Process claim to the state courts, *Picard*, 404 U.S. at 275, Petitioner's due process claim has not been exhausted. The court thus declines to consider the claim and denies habeas relief.

### 2. Confrontation Clause Claim

Petitioner claims that impermissible hearsay testimony at trial violated his right to confront witnesses against him under the Sixth Amendment. ECF No. 23, at 46. He specifically contends that during his trial in Westchester

County Court, one of the detectives referenced Farmer's statements to the police in his testimony. ECF No. 23, at 46.

Under New York Criminal Procedure Law § 470.05(2) (McKinney 2017), a defendant in a New York state criminal trial must object to a matter that he or she contests during trial to preserve a claim for error in admission of evidence. *See* N.Y. Crim. P. Law § 470.05(2) ("For purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same."); *People v. Gray*, 652 N.E.2d 919, 921 (N.Y. 1995) ("[I]n order to preserve a claim of error in the admission of evidence or charge to the jury, a defendant must make his or her position known to the court."). This is referred to as the contemporaneous objection rule, and requires "at the very least, that any matter which a party wishes the appellate court to decide" be "brought to the attention of the trial court at the time and in a way that g[ives] the latter the opportunity to remedy the problem and thereby avert reversible error." *People v. Luperon*, 647 N.E.2d 1243, 1247-48 (N.Y. 1995).

This rule is in place in order to "fairly apprise the court and the opposing party of the nature and scope of the matter contested, and to allow the necessary evidentiary treatment and trial-level advocacy to be pursued." *People v. Jones*, 440 N.Y.S.2d 248, 261 (N.Y. App. Div. 2d Dep't 1981). Thus, even generally objecting is not enough to preserve an issue on appeal. The defendant must,

during the criminal trial, specifically object to the error for it to be preserved. *Garvey v. Duncan*, 485 F.3d 709, 714 (2d Cir. 2007) ("New York's highest courts uniformly instruct that to preserve a particular issue for appeal, defendant must specifically focus on the alleged error."); *People v. West*, 436 N.E.2d 1313, 1313 (N.Y. 1982) ("Although a general protest was raised against this testimony, defendant at no time objected to this testimony on th[is] specific ground . . . [and] [t]hus, defendant has failed to preserve this issue for appellate review."). New York courts have consistently interpreted § 470.05(2) to require specific objections in trial courts in order to preserve that objection on appeal. *See Garvey*, 485 F.3d at 714-16. In the Confrontation Clause context, courts have found that merely objecting, without clearly specifying that the objection is a Confrontation Clause objection, is not enough to preserve the issue on appeal. *See Daye*, 696 F.2d at 193 ("[A] defendant's claim that he was deprived of a fair trial because of the admission in evidence of a statement objectionable as hearsay would not put the court on notice that the defendant claimed a violation of [the Confrontation Clause].").

The Supreme Court, as well as courts in this Circuit, have recognized this importance of state contemporaneous objection rules. In *Wainwright v. Sykes*, 433 U.S. 72, 88 (1977), the Supreme Court stated that contemporaneous objection rules serve "many interests" including "enabl[ing] the record to be made . . . when the recollections of witnesses are freshest," allowing judges to make "factual determinations necessary for properly deciding the federal constitutional question," and contributing to the finality of the decision. The Second Circuit

32

has also recognized that this rule services a legitimate interest, and has found that New York's contemporaneous objection rule is a procedural bar to federal habeas review. *See Peterson v. Scully*, 896 F.2d 661, 663 (2d Cir. 1990) ("If a state appellate court refuses to review the merits of a criminal defendant's claim of constitutional error because of his failure to comply with [the] 'contemporaneous objection' rule, a federal court generally may not consider the merits of the constitutional claim on habeas corpus review."); *see also Garcia v. Lewis*, 188 F.3d 71, 78-79 (2d Cir. 1999) ("We, too, have recognized the propriety of such rules . . . . [and] [a]s a result, we have observed and deferred to New York's consistent application of its contemporaneous objection rules.").

Here, Petitioner claims in his habeas petition that the testimony of one of the detectives violated his Confrontation Clause rights because the detective referred to Farmer's statements to the police. ECF No. 23, at 47; *People v. South*, 849 N.Y.S. 2d 603, 735 (N.Y App. Div. 2d Dep't 2008). He also raised this claim when he appealed his conviction to the Appellate Division. *South*, 849 N.Y.S.2d at 735. In its decision, the Appellate Division found that Petitioner "failed to preserve [the Confrontation Clause] contention on any of the three grounds asserted," and cited two cases in which the Court of Appeals found that a defendant failed to preserve an objection on appeal because the defendant did not specifically object on Confrontation Clause grounds. *See People v. Kello*, 746 N.E.2d 166, 166 (N.Y. 2001) ("Defendant, however, never based his trial objection . . . on the Confrontation Clause. Rather, the only issue raised before the trial court was the erroneous admission [of evidence] under our State common-law

hearsay rule."); *West*, 436 N.E.2d at 1313 ("Although a general protest was raised against this testimony, defendant at no time objected to this testimony on the specific ground that it constituted improper bolstering. Thus, defendant has failed to preserve this issue for appellate review."). Thus, the state appellate court made it clear in its opinion that it would refuse to review the merits of the claim based on the contemporaneous objection rule. *South*, 849 N.Y.S.2d at 735.

Similar to the cases cited by the Appellate Division, although Petitioner did raise an objection to the testimony at trial, the objection was not specific—he merely stated that he was "going to object." ECF No. 7, at 17. He did not state any specific grounds for his objection. ECF No. 7, at 17. Further, his contention that the court "knew that [his] Confrontation rights were being infringed upon" because of the statements that the judge made at trial, ECF No. 23, at 53, on its own, does not constitute grounds for appellate review; Petitioner himself did not make a sufficiently specific objection. The court defers to the Appellate Division's determination that Petitioner's claim was not preserved for appellate review based on New York's contemporaneous objection rule, and finds that the claim is barred based on adequate and independent state grounds.

The court defers to Appellate Division's determination that Petitioner's claim was procedurally barred by New York Criminal Procedure Law § 470.05(2) and declines to evaluate the merits of this claim. The court denies Petitioner habeas relief for this claim based on the existence of adequate and independent state grounds.

## CONCLUSION

For the reasons set forth above, the court concludes that the instant petition for habeas corpus relief pursuant to 28 U.S.C. § 2254 should be denied in its entirety. The first three claims are denied based on review of the state court opinions. The last two are denied on procedural grounds. The Clerk of Court is respectfully requested to close this case.

SO ORDERED

Dated: New York, New York
October 25, 2017

Thomas P. Griesa
U.S. District Judge